244

SCHWAB *v.* INDUSTRIAL COMMISSION ET AL.

(85 P. [2d] 723)

Decided December 5, 1938.

Mr. CARL F. BERUEFFY, for plaintiff in error.

Mr. BYRON G. ROGERS, Attorney General, Mr. LOUIS SCHIFF, Assistant, Mr. FRANK C. WEST, for defendants in error.

*In Department.*

MR. JUSTICE BAKKE delivered the opinion of the court.

THIS is a workmen's compensation case. The findings and award of the Industrial Commission on a claim for compensation for permanent partial disability were adverse to claimant, and its action was upheld by the district court. The judgment is here for review on writ of error.

Plaintiff in error, the claimant, was injured March 31, 1937, while working as a "top man" in one of the properties of the Rocky Mountain Fuel Company when he "got caught between shakers while changing screens." The injury was described in the attending physician's report as "moderately severe squeeze to lower right chest" and in that of the employer as "bruised right kidney, possible injury to right kidney," with an anticipated incapacity of two weeks.

Claimant was hospitalized for a brief period and an X-ray examination disclosed a ptosis (displacement downward) of the right kidney and an operation of fixation was recommended which claimant at first refused.

A hearing was had before a referee of the Industrial Commission July 30, 1937, who found that the temporary disability had not ended and compensation was fixed at $14.00 a week.

August 25th, claimant submitted to the operation for fixation, and October 4, 1937, the attending physician certified to the commission that the condition of claimant was "excellent," and that "permanent disability has been removed."

October 30, the commission found "his temporary disability has not terminated and his permanent disability cannot now be determined."

November 6, the employer filed with the commission a supplemental report reciting that claimant returned to work October 18, 1937, at full time and former wage and that "permanent disability has been removed." This report was signed by claimant as correct.

December 9, 1937, claimant filed a "petition for allowance of compensation for permanent partial disability" which admitted "that following said release, claimant has returned to work for said employer, and has been employed at light work in and about the mine"; but alleging "that claimant suffers severe headaches and pains in his back, in the muscles of the abdomen, and is unable to stoop or straighten without severe pains, which render it im-

possible for him to engage in manual labor. That claimant constantly passes blood in his urine and is afflicted with a shortening of his breath to such an extent that deep breathing is painful and difficult.'' He further alleged that such incapacity was ''caused by the prior injuries sustained by claimant, due to the accident.''

A preliminary hearing was had on this petition December 29, 1937, at which claimant, testifying concerning his condition said, ''everything was too sore in the stomach and everything drawed down.'' ''When I do anything my stomach has sharp pains and I cannot take a deep breath and it draws in my side and stomach when I shovel.'' ''I have been passing blood at different times and then I went to another doctor [Dr. Bassow].'' Claimant further testified that he could no longer continue his work as an auctioneer (at which work he said he made about twice as much as in the mine), because he could not take a deep breath. He admitted, however, that he had returned to work at the mine, was receiving full pay, worked whenever the mine was operating and only lost time when he laid off to see the doctors.

The matter was continued to February 8, 1938, to permit further physical examination by the doctors.

Dr. Bassow, urologist specializing in kidney and bladder ailments, said his examination disclosed a stricture of the right ureter; that it was difficult to say that the particular situation was due to injury and believed that no one could definitely make that statement; that the man complained of the symptom of pain and whether it came from the kidney or bladder he did not know; that the symptoms referred to were subjective, and that he never saw any bloody flow or anything to cause it.

Dr. T. Leon Howard, witness for respondents, and who performed the operation of fixation, was of the opinion that there was no stricture of the right ureter, and testified that the X-ray taken after the operation revealed that the right kidney was in normal position and that it

was functioning properly; that the pain was not a kidney pain.

Dr. H. H. Wear, appointed by the commission to examine the patient, testified, "I am of the opinion that this patient does not have sufficient renal [kidney] pathology to warrant his having pain, and would suggest that his disability is not the result of accident." "There is no obstruction of the ureter at the present time." "My conclusion is that he has no disability due to the injury to the right kidney." "In my opinion there is no impairment of function as a result of the accident. None whatsoever."

The above excerpts are typical of the medical testimony.

June 9, 1938, the commission entered its supplemental award as follows: "That claimant sustained an injury to his right kidney in an accident arising out of and in the course of his employment on March 31, 1937. That his temporary total disability terminated on October 18, 1937, and that claimant has sustained no permanent partial disability as a result of his accident."

Was this finding justified by the evidence? We are of the opinion that it was, and agree with the conclusion of the commission and district court that claimant failed to sustain the allegations of his petition for allowance of compensation for permanent partial disability.

A brief analysis of the situation shows that the only possible connection between the injury to the kidney, which was the only basis for compensation, was the alleged stricture of the right ureter to which Dr. Bassow testified. However, Dr. Howard's explanation of what appeared to be a stricture, was a very reasonable one, and the commission was fully justified in believing there was no such stricture. Dr. Bassow admitted on cross examination that he could form no opinion as to the cause of any stricture in either the right or left ureter. There was no medical testimony of blood in the urine.

Granting that claimant may have suffered some pain

following his return to work, there is a total absence of proof of physiological or ,anatomical sequence between the injury to the kidney and the pain of which he complains, and the basis he suggests for diminution of earning capacity is hardly convincing, because the record does not disclose any sale at which he acted as auctioneer; consequently there was nothing for the commission to consider upon that angle of the case. His asserted inability to work as an auctioneer, caused by shortness of breath, must have been predicated upon the alleged stricture of the ureter, but the record discloses no testimony to support such an allegation.

Counsel for claimant relies on the recent case of *National Co. v. Kelly,* 101 Colo. 535, 75 P. (2d) 144, and argues that the injury to the head in that case was analogous to the injury to the kidney here; but a preponderence of the medical testimony in the present case was to the effect that the kidney is healed and functioning normally, and Dr. Bassow admitted that the pains here were subjective, which admission is in accordance with the evidence. It is to be noted also that the head injury in the Kelly case was admittedly permanent.

Judgment affirmed.

MR. CHIEF JUSTICE BURKE, MR. JUSTICE HILLIARD and MR. JUSTICE HOLLAND concur.